IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 1:14-CR-00214 |
| Plaintiff/Respondent, | |
| -vs- | |
| | JUDGE PAMELA A. BARKER |
| GERARDO RODRIGUEZ, | |
| Defendant/Petitioner. | MEMORANDUM OPINION & ORDER |

Currently before the Court is the Motion for Sentence Reduction Pursuant to 18 U.S.C. 3582(c)(1)(A) Compassionate Release filed by Defendant/Petitioner Gerardo Rodriguez ("Rodriguez" or "Defendant") on October 23, 2023 ("Defendant's *Pro Se* Motion").  (Doc. No. 1368.)  On April 29, 2024, the Office of the Federal Public Defender filed a Supplement to Defendant's *Pro Se* Motion ("Defendant's Supplement").[1]  (Doc. No. 1398.)   And on June 21, 2024 the United States of America filed the Government's Response in Opposition to Defendant's Motion ("the Government's Response").  (Doc. No. 1408.)  This case was reassigned to the undersigned on September 24, 2024.

**Background**

On November 12, 2014, Rodriguez plead guilty to Count 1 of the Indictment, specifically Conspiracy to Possess with Intent to Distribute and Distribution of 1 Kilogram or more of Heroin, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C).  (Doc. No. 368.)  On March 2, 2015 Rodriguez was sentenced to a term of 151 months with credit for time served and five years of supervised release.

---

[1] Herein, Defendant's *Pro Se* Motion and Defendant's Supplement, together, will be referred to as "Defendant's Motion."

(Doc. No. 575.)  According to the Presentence Investigation Report filed on March 2, 2015, the base offense level pursuant to U.S.S.G. § 2D1.1(c)(9) was 22 because the offense involved at least 80, but less than 100 grams of heroin.  (Doc. No. 563, PageID # 3472.)  The PSR writer applied a Chapter Four Enhancement making Rodriguez a Career Offender because Rodriguez was at least 18 years old at the time of the offense of conviction; the offense conviction was a felony that was either a crime of violence or a controlled substance offense; and Rodriguez had had at least two prior felony convictions of either a crime of violence or a controlled substance offense.  (*Id.*)  And, because Rodriguez was a Career Offender, the PSR writer concluded that the offense level was 32 pursuant to U.S.S.G. § 4B1.1.  (*Id.*)  After applying a three-level decrease for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a) and (b), the PSR writer concluded that Rodriguez's total offense level was 29.  (*Id.*)  The PSR writer also concluded that because Rodriguez qualified as a Career Offender, his criminal history category was VI pursuant to U.S.G.G. § 4B1.1(b), making his Guidelines Range sentence 151 months to 188 months.  (Doc. No. 563, PageID # 3475.)

The PSR writer represented that the Robbery with Firearm Specifications (F2) conviction in Cuyahoga County Court of Common Pleas, Case No. 07CR-494319 referenced in paragraph 28 of the PSR and the Drug Trafficking (F4) conviction in Cuyahoga County Court of Common Pleas, Case No. 11CR-55212 referenced in paragraph 29 of the PSR each qualified as a Chapter Four predicate offense qualifying Rodriguez as a Career Offender.[2]  (*Id.*, PageID 3474.)

In Defendant's *Pro Se* Motion, and as an initial matter, Rodriguez asserts that he has exhausted his administrative remedies, and in support thereof, attaches as Exhibit 1, a copy of his

---

[2] The Robbery with Firearm Specifications constituted a "crime of violence" offense, and the Drug Trafficking constituted a "controlled substance" offense.

2

request for compassionate release to the warden dated 9/6/2023. (Doc. No. 1368-1.) In Defendant's *Pro Se* Motion, Rodriguez sets forth three grounds for release. First, under what Rodriguez delineates "GROUND ONE: Intervening Change in Law", Rodriguez asserts that intervening changes in the law, specifically changes regarding what offenses qualify as predicate offenses for the designation of Career Offender status, warrant his release.[3] In support thereof, Rodriguez cites *Concepcion v. United States*, 142 S. Ct. 2389, 2393 (2002), wherein the Supreme Court held that "[t]he First Step Act allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence." (Emphasis added.) Rodriguez also directs this Court's attention to the fact that Ariyen Flakes ("Flakes"), a co-defendant in this case, was granted compassionate release based upon an intervening change in the law. Second, under what Rodriguez delineates "GROUND TWO: FAMILY CIRCUMSTANCES", Rodriguez contends that "his mother's health has taken a turn for the worse," and "[a]ssisting his ailing mother *who requires the assistance of an immediate family member to help with the tasks of daily living* forms the basis for this ground." ((Emphasis added.) Doc. No. 1368, PageID # 8659.) Third, under what Rodriguez delineates "GROUND THREE:

---

[3] Rodriguez asserts, without citation to any authority, that "since Petitioner's sentencing, the Sixth Circuit has clarified that 'attempt' and inchoate offense[s] cannot serve as the basis for career offender status." (Doc. No. 1368, PageID # 8658.) The Court acknowledges that in *United States v. Havis*, 927 F.3d 382, 387 (6th Cir. 2019) (en banc) (per curiam), involving the issue of covered career offender predicate offenses, the Sixth Circuit held that "[t]he Guidelines' definition of 'controlled substance offense' does not include attempt crimes." And, in *United States v. Cordero*, 973 F.3d 603 (6th Cir. 2020), also involving the issue of covered career offender predicate offenses, the Sixth Circuit concluded that its reasoning in *Havis* applied with equal force to inchoate crimes, i.e., conspiracy to distribute controlled substances. But, the Sixth Circuit has also concluded that *Havis* does not apply retroactively (*United States v. McCall*, 56 F.4th 1048, 1061 (6th Cir. 2022) (en banc)); and because *Cordero* merely extended *Havis* to a related set of offenses, it does not apply retroactively either. *United States v. Akridge*, 62 F.4th 258, 265 (6th Cir. 2023). Indeed, in *Akridge*, which involved a motion for resentencing under the First Step Act, the Sixth Circuit explained: "[W]e have repeatedly held that *Havis* doesn't apply retroactively….[citations omitted]. For another, *Havis* and *Cordero* didn't apply to the Fair Sentencing Act or even mention crack-cocaine penalties. Instead, hey covered career-offender predicate offenses. So, neither case fits within the single 'variable' that resentencing courts are permitted to consider when recalculating a defendant's Guidelines range under the First Step Act." *Akridge*, *id*.

3

MEDICAL CONDITION", Rodriguez submits that "[t]he medical conditions that [he] suffers from[4] form a dangerous recipe in the event that he contracts COVID-19," specifically "the risk of serious illness or death" that constitutes extraordinary and compelling circumstances warranting release. (*Id.*, PageID # 8660.)

Defendant's Supplement, filed by counsel for Rodriguez, "pertains to Mr. Rodriguez's family circumstances that justify release." (Doc. No. 1398, PageID # 8785.) According to counsel for Rodriguez, "Mr. Rodriguez raises other grounds which are adequately laid out in his original *pro se* filing and are not discussed within this supplement." (*Id.*) And counsel reasserts that Rodriguez has exhausted his administrative remedies with the BOP, correctly citing and relying upon 18 U.S.C. § 3582(c)(1)(A) and *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020) for this assertion. (*Id.*, PageID # 8785-86.) In the Government's Response, the Government does not dispute this assertion, and the Court does find that Rodriguez has exhausted his administrative remedies.

In Defendant's Supplement, counsel for Rodriguez contends that "[a]s detailed in his pro se motion for compassionate release, Mr. Rodriguez's extraordinary and compelling circumstances

---

[4] According to Rodriguez, he suffers from obesity, hyperlipidemia, hypertension, esophageal reflux, enthesopathy, high blood pressure, sleep apnea, [and] eye problems." (*Id.*) Rodriguez attaches as Exhibit 2 to Defendant's *Pro Se* Motion, a medical record from the BOP generated on 2/23/2021, setting forth his medical conditions identified between 4/22/2015 and 8/6/2020.

4

fallwithin the Medical Circumstances,[5] Unusually Long Sentence,[6] Family Circumstances and the Other Reasons catchall provision[7]." Then, counsel for Rodriguez asserts that the supplement will address the Family Circumstances basis for the motion and proceeds to cite case law from various district courts in support of his argument that "[t]he need to provide care to a parent has been found to be an extraordinary and compelling reason warranting a sentence reduction" and to U.S.S.G. § 1B1.13(b)(3)(C)[8] for his proposition that "the Guidelines now explicitly state that the need to care for an ailing parent can constitute extraordinary or compelling circumstances." (Doc. No. 1398, PageID # 8788.) The problem with Defendant's argument that Family Circumstances warrant his release is that evidence has not been submitted to demonstrate that his mother is incapacitated, and that Rodriguez is the only available caregiver for her. Indeed, in Defendant's *Pro Se* Motion, Rodriguez acknowledges that his mother's "exact medical condition, and the terms for her medical

---

[5] Counsel for Defendant cites and quotes from U.S.S.G. § 1B1.13(b)(1)(C), which provides that extraordinary and compelling circumstances exist when "the defendant is suffering from a medical condition that requires long-term or special medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." (Doc. No. 1398, PageID # 8787.) The Court would add that as regards the "MEDICAL CIRCUMSTANCES OF THE DEFENDANT," extraordinary and compelling reasons also include that the defendant "is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory); and the defendant is "suffering from a serious physical or medical condition," *** a serious functional or cognitive impairment, or *** experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. §§ 1B1.13(b)(1)(A) and 13(b)(1)(B).

[6] Counsel for Defendant cites and quotes from U.S.S.G. § 1B1.13(b)(6), which reads: "If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances (hereinafter, "the Unusually Long Sentence provision"). (*Id.*)

[7] The "Other Reasons" provision is set forth in U.S.S.G. § 1B1.13(b)(5) and provides that extraordinary and compelling reasons exist when the "defendant presents any other circumstance or combination of circumstance that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4).

[8] U.S.S.G. 1B1.13(b)(3)(C) provides that extraordinary and compelling reasons include "[t]he incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent."

diagnosis cannot be detailed herein because [he] is unable to obtain such records." (Doc. No. 1368, PageID # 8659.) Moreover, Rodriguez does not even assert, much less demonstrate, that he is the only available caregiver for his mother. And, in the Supplement, counsel for Rodriguez represents that he has submitted a request for Rodriguez's mother's medical records but has not received them from the relevant facilities and providers and submits that as soon as they are received, he will file them under seal as a supplement. (Doc. No. 1398, PageID #s 8788-89.) And, like Rodriguez, counsel for Rodriguez does not assert, much less demonstrate, that Rodriguez would be the only available caregiver for his mother.

In the Government's Response, the Government argues that Rodriguez has not demonstrated that he is the only available caregiver for his mother, but also argues that the Presentence Report indicates that Rodriguez's mother remarried, she has two adult aged siblings and four adult aged half siblings, two of which reside with their shared mother, and the PSR does not contain any information to suggest that any of these family members would be unwilling, unable, or unsuited to take care of Rodriguez's mother. (Doc. No. 1408, PageID # 8832.) The Government also argues that Rodriguez has not established that he would be a suitable caretaker for his mother if he were released pursuant to U.S.S.G. § 1B1.13(b)(3)(C).

At this juncture, without evidence of his mother's incapacitation or that he is the only available caregiver if she is incapacitated, Rodriguez has failed to meet his burden to be released because of Family Circumstances, and the Court declines to grant compassionate release on that basis. If additional evidence in the form of Rodriguez's mother's medical records is submitted demonstrating her incapacitation, and if evidence is submitted that Rodriguez is the only available caregiver for her, then the Court will evaluate whether Rodriguez would be a suitable caretaker for his mother.

In support of Rodriguez's argument that he should be granted compassionate release because he suffers from various medical issues is also without merit. First, the medical information provided by Rodriguez is stale. Rodriguez has not met his burden of demonstrating – through the submission of recent medical records or other evidence - that he meets any of the medical circumstances set forth under U.S.S.G. §§ 1B1.13(b)(1)(A), (B) or (C). Indeed, he does not claim to have a terminal illness; he does not assert that he has any physical or medical condition or is suffering from a serious functional or cognitive impairment that substantially diminishes his ability to provide self-care at the prison and from which he is not expected to recover; and he does not assert that he is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death. He merely asserts that the medical conditions that he suffers from make him vulnerable to COVID-19 and thus the risk of serious illness or death. Rodriguez does not assert, much less demonstrate, that he has not been offered a COVID-19 vaccine, or been denied the vaccine upon his request, or that he has contracted COVID-19 at any time during his incarceration.[9] Therefore, Defendant's request that he be granted compassionate release based upon his medical circumstances is without merit, and the Court declines to grant compassionate release on this basis.

In the Government's Response, the Government argues that the Sentencing Commission supplanted Congress's legislative role and exceeded its statutory authority in promulgating the

---

[9] *See United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021), finding that a defendant's incarceration during the COVID-19 pandemic – when the defendant has access to the COVID-19 vaccine – does not present an "extraordinary and compelling reason" warranting a sentence reduction. Indeed, currently there is no COVID-19 pandemic, and Rodriguez has not shown that he has not been offered or given the vaccine.

Unusually Long Sentence provision, making it invalid.[10] In the alternative, the Government argues that even if the Sentencing Commission acted within its statutory authority when promulgating that provision, Rodriguez does not meet the criteria set forth in the Unusually Long Sentence provision.

The Government notes that Rodriguez did not cite to the Unusually Long Sentence provision in Defendant's *Pro Se* Motion,[11] but even if he had, Rodriguez's argument that the intervening changes in the law warrant his release is without merit. First, the Government quotes U.S.S.G. § 1B1.13(c) which reads:

> (c) LIMITATION ON CHANGES IN LAW—**Except as provided in subsection (b)(6), a change in the law (including an amendment to the Guidelines Manual that has not bee made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement**. However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction.

(*Id.*) (Emphasis added.)

The Government argues that Rodriguez does not meet the criteria of the Unusually Long Sentence provision by its own terms and therefore, the above-quoted provision (hereinafter the "Limitations on Changes in Law provision") cannot be invoked by Rodriguez in support of his request for a sentence reduction. The Government does concede that Rodriguez has satisfied the first

---

[10] As this Court understands the Government's argument, in Section 3582(c)(1)(A), Congress instructed that any reason sufficient to overcome the general prohibition on sentence modifications must be "extraordinary and compelling" (Section 3582(c)(a)(A)(i)), and that no interpretation of those terms, particularly when viewed in light of Section 3582(c)(1)(A) can encompass nonretroactive or intervening changes in law; and that the Commission's interpretation of Section 3582(c)(1)(A) conflicts with basic separation-of-powers principles.

[11] The Government correctly represents that this provision was not in effect at the time Rodriguez filed Defendant's *Pro Se* Motion. However, in the Supplement, counsel for Rodriguez did cite to – but did not discuss or elaborate upon – the application of this provision. Regardless, the Government argues that the Unusually Long Sentence provision does not support Rodriguez's request for early release.

8

condition of the Unusually Long Sentence provision, i.e., that he has served at least 10 years of the term of imprisonment, and the Court agrees.[12]

The Government is correct in asserting that Rodriguez has cited to or invoked an "intervening judicial decision," *Conception v. United States*, 142 S. Ct. 2389 (2022) in support of Defendant's Motion, but argues that in doing so, "Rodriguez is not relying on a *change* in the law that was not (and could not have been) applicable at his sentencing, such as a subsequent decision by Congress to lower the applicable penalties for his offense. (Doc. No. 1408, PageID # 8826.) According to the Government, "[i]nstead he seeks to challenge the validity of his judgment based on a judicial decision interpreting existing law in a manner that supports a claim of legal error that he did not previously recognize." (*Id.*)[13] The Government asserts that "[e]xcluding challenges to the legal validity of a conviction or sentence based on intervening judicial decisions, moreover, is consistent with the substantial weight of authority in the courts of appeals," citing appellate court decisions from the Third, Fourth, Fifth, Seventh, Eighth, Tenth, and importantly the Sixth Circuit's decision in *United States v. West*, 70 F.4th 341, 346-47 (6th Cir. 2023) wherein it concluded that the presumed sentencing error in West's case could not serve as an extraordinary and compelling reason for his compassionate release.

In so concluding, the Sixth Circuit abided by "the spirit and language of" its decision prior decision in *United States v. McCall*, 56 F.4th 1048 (6th Cir. 2022) (en banc), *cert denied*, 143 S. Ct. 2506 (2023), as well as "the persuasive authority of at least five sibling circuits." 70 F.4th at 348. In

---

[12] The Government's Response was filed on June 21, 2024 and in it, the Government correctly represented that Rodriguez's sentence was imposed on March 2, 2015, and that he was given credit for time served since his arrest on June 26, 2014. As of the writing of this Memorandum Opinion and Order, there is no doubt that Rodriguez has served at least 10 years of his 15 years sentence.

9

*McCall*, the Sixth Circuit held that "[n]onretroactive legal developments do not factor into the extraordinary and compelling analysis. Full stop." 56 F.4th at 1066. And, in so holding, the Sixth Circuit distinguished *Conception*, explaining:

> \*\*\**Concepcion* concerned a different and unrelated provision of the First Step Act that explicitly applied retroactively. The decision said nothing about the 'threshold question [of] whether any given prisoner has established an 'extraordinary and compelling' reason for release. [Citations omitted.]
>
> \*\*\* *Concepcion's* insight goes to what a court may consider *after* it finds a defendant meets the threshold requirement for a sentence modification. If that threshold is met, *Concepcion* teaches that a district court may consider any number of changes in law and fact when exercising its discretion to grant or deny the defendant's motion. [Citation omitted.]
>
> \*\*\* "We take the Supreme Court at its word that *Concepcion* is about the matters that district judges may consider when they" exercise their discretion to "resentence defendants," not whether those defendants qualify for resentencing in the first place. [*United States v.*] *King*, 40 F. 4th [594,] at 596.

*McCall*, 56 F.4th at 1061-62.[14]

Moreover, in *United States v. McKinnie*, 24 F.4th 583 (6th Cir. 2022), the Sixth Circuit rejected a pre-*Havis* defendant's motion to reduce his sentence on similar grounds, reasoning that "because *Havis* does not apply retroactively, a *Havis* error is not an extraordinary and compelling reason to modify an inmate's sentence under § 3582(c)(1)(A)(i)" (*id.* at 587); and by extension, this Court submits that a *Cordero* error would not constitute an extraordinary and compelling reason to do so either.

---

[14] The Court would add that in *United States v. Orta*, No. 22-5471, 2023 WL 3794805 at \*2, (6th Cir. May 12, 2023), the Court reiterated that in *McCall*, it had determined that the Supreme Court's decision in *Concepcion* did not dictate a result other than that reached in *McCall*, i.e., that "'[n]onretroactive legal development, considered alone or together with out factors, cannot amount to an 'extraordinary and compelling reason' for a sentence reduction.'"

This Court recognizes that "both *McCall* and *McKinnie* were issued before the Sentencing Commission amended § 1B1.13 to add [the Unusually Long Sentence provision] as a possible basis for finding extraordinary and compelling reasons under the compassionate release statute;" and that there "is currently a debate among jurists as to whether the Sentencing Commission exceeded its authority by adopting § 1B1.13(b)(6) and whether such an amendment supersedes binding prior case law." *United States v. Sanders*, No. 5:14-CR-7-3, 2024 WL 1530946, at *3 (N.D. Ohio Apr. 9, 2024), citing *United States v. Hicks*, No. 1:08-cr-45, 2024 WL 866715, at *2-3 (S.D.Ind.Feb.29, 2024) (collecting cases). The Court is also aware that another court within this Circuit have concluded that the Unusually Long Sentence provision is nullified by binding Sixth Circuit precedent, specifically *McCall*. *United States v. Wilson*, No. 1:92-cr-138, 2024 WL 1556313, at *8 (N.D. Ohio April 10, 2024); and *United States v. McHenry*, No. 1:93 CR 84, 2024 WL 1363448, at *7 (N.D. Ohio Mar. 29, 2924). But decisions to the contrary include *United States v. Brown*, No. 2:95-CR-66(2), 2024 WL 409062, at *4-6 (S.D. Ohio Feb. 2, 2024), *United States v. Bricker*, No. 1:05 CR 113, 2024 WL 934858, at *2 (N.D. Ohio Mar. 5, 2024).

Further, the Court is aware that the validity of the Unusually Long Sentence provision has been raised in appeals before the Sixth Circuit in *McHenry* and *Brown*, respectively assigned Case Nos. 24-3289 and 24-3286, and the Court of Appeals has consolidated the cases for oral argument scheduled for October 31, 2024. However, this Court is persuaded by the Court's decisions in *Wilson* and *McHenry* and finds that the Sixth Circuit's decision in *McCall* precludes this Court from granting Defendant's Motion. Since this Court is bound by *McCall*, it must and does conclude that the nonretroactive legal developments that Rodriguez asserts, considered alone or together with other

factors, cannot amount to an "extraordinary and compelling" reason for a sentence reduction under the First Step Act.

If the Sixth Circuit determines that its decision in *McCall* does not so dictate, then upon the filing of a motion for reconsideration by Rodriguez, the Court will evaluate other factors, to include Judge Gwin's prior decision to grant compassionate release to Rodriguez's co-defendant Ariyen Flakes, and the Section 3353(a) factors.

For the reasons set forth above, Defendant's Motion is DENIED.

**IT IS SO ORDERED.**

Date:  October 28, 2024

     _s/Pamela A. Barker_  
PAMELA A. BARKER  
U. S. DISTRICT JUDGE